UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| BASARU ASOLO, | ) | |
|         Petitioner, | ) | |
| | ) | No. 21 CV 50059 |
| v. | ) | Judge Iain D. Johnston |
| | ) | |
| BILL PRIM, *et al.*, | ) | |
|         Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Basaru Asolo is a noncitizen who since September 2020 has been detained by U.S. Immigration and Customs Enforcement (ICE). Mr. Asolo contends he is being held in violation of his due process rights under the U.S. Constitution as well as in violation of the Full Faith and Credit Act, *see* 28 U.S.C. § 1738. For the reasons explained below, Mr. Asolo's detention violates neither, and so his petition [1] and motion for a preliminary injunction [3] are denied.

**BACKGROUND**

Mr. Asolo is a citizen of Nigeria who entered the United States in 2014 on a tourist visa. Petition [1] at 5. The visa allowed Mr. Asolo to legally remain in the country until January 19, 2015, Response [17] at 27, but he has remained in the country continuously since entering, Petition [1] at 6.

The events that led to Mr. Asolo's detention began on September 26, 2020, when shots rang out in a parking lot next to a club in Indianapolis. *Id.* at 6. Mr. Asolo fled from the scene in a car, but police chased after him. *Id.* at 6-7. They eventually stopped him, arrested him, and during a search incident to arrest found on his person bags containing marijuana and cocaine. *Id.* at 7. According to police, they also found a handgun near where Mr. Asolo was apprehended and live .40 cal rounds both near where he was apprehended and in the vehicle he was driving. *Id.*, Ex. 6 at 1. He was initially charged in Indiana state court with possession of a narcotic drug, resisting law enforcement, and leaving the scene of an accident. *Id.* at 7.

The Indiana court approved releasing Mr. Asolo on $500 bond. *Id.*, Ex. 2. But before he could be released, on September 27, 2020, he was taken into custody by ICE. *Id.* at 7. He has been placed into removal proceedings under a Notice to Appear, which charges him with remaining in the United States longer than permitted in violation of 8 U.S.C. § 1227(a)(1)(B). Dkt. 17, Ex. B ¶¶ 8-9. He first appeared before an immigration judge on October 19, 2020, who ordered him detained under 8 U.S.C. § 1226(a) after concluding that he posed a danger to the community based on his criminal history. *Id.* ¶12. He requested a bond redetermination on two occasions, November 17, 2020, and December 17, 2020, but on each occasion his requests were denied after the judge found no materially changed circumstances since his first bond

determination. *Id.* ¶¶ 13-14. Mr. Asolo appealed the most recent denial of his request for a new bond hearing to the Board of Immigration Appeals. Response [17], Ex. B § 14. At last report, that appeal remained pending. *Id.*

On January 11, 2021, Mr. Asolo submitted a Form I-589 applying for asylum and withholding of removal under 8 U.S.C. § 1231(b)(3)(A) based on fear of harm or mistreatment if he returns to Nigeria. Petition [1], Ex. 4. Specifically, he contends that political enemies of his father kidnapped him in October 2013, and although he escaped and moved to a different state within Nigeria, his father's political enemies found and attacked him again, this time shooting his car during which his body caught on fire. A hearing on the merits of his application was scheduled for February 22, 2021, but on that day he sought and obtained a continuance to allow time to file an I-130 visa petition based on his recent marriage to a U.S. citizen. Response [17], Ex. B ¶ 19. His wife filed the I-130 visa petition that same day, February 22, 2021, seeking legal permanent resident status for Mr. Asolo under 8 U.S.C. § 1255(a). Reply [18], Ex. 1. The immigration court has scheduled a status hearing for August 30, 2021. https://portal.eoir.justice.gov/InfoSystem/CourtInfo (A-Number 216-656-257) (last visited August 4, 2021).

Mr. Asolo remains in ICE custody at the McHenry County Jail. In his Indiana criminal proceeding he now also faces an additional charge, possessing a handgun without a license, and his bond was raised to $25,000. Petition [1] at 8.

Before the Court is Mr. Asolo's petition under 28 U.S.C. § 2241 seeking his immediate release from ICE detention or, alternatively, a new bond hearing. In support of his petition, Mr. Asolo offers two arguments. First, he contends that the Indiana criminal court already determined that he was not a danger to the community when it approved his release on bond, and so the immigration judge violated the Full Faith and Credit Act by reaching a contrary conclusion when denying him bond. Second, he contends that the statute that allows his detention pending removal proceedings, 8 U.S.C. § 1226(a), is subject to "constitutional restraints," including that he be afforded a bond hearing at which the government must prove by clear and convincing evidence that he should remain detained, as opposed to the hearing he received which placed the burden on him to justify his release. Mr. Asolo's petition also included a claim that the defendants denied him the right to marry, but he dropped that claim after he got married. *See* Dkt. 6. The government responded to his petition, Mr. Asolo replied, the petition is now fully briefed, and the Court has reviewed all of the parties' submissions. Because the Court's ruling does not turn on any facts that are in dispute, no evidentiary hearing is needed and the Court rules on the filings. *See* Rules Governing Section 2254 Cases Rules 1(b), 8.

## ANALYSIS

Under the Immigration and Nationality Act, the government may "issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018) (quoting 8 U.S.C. § 1226(a)). The government "may release [an] alien on bond of at least $1,500 . . . or conditional parole," except those detained pursuant to § 1226(c). 8 U.S.C. § 1226(a)(2). Under § 1226(a),

the burden falls on the "alien [to satisfy] the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." As opposed to § 1226(a), 8 U.S.C. § 1226(c) *requires* the government to detain "any alien who is inadmissible by reason of having committed" certain offenses such as drug offenses. An immigration judge's "discretionary judgment regarding the application of this section shall not be subject to review," and "no court may set aside any action or decision . . . regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). However, the statute does not bar this Court from exercising jurisdiction over an attack to the statutory framework itself, such as Mr. Asolo's argument that the statute is unconstitutional. *See Jennings*, 138 S. Ct. at 841. The proper means of attack is a petition for habeas relief under 28 U.S.C. § 2241, and so this Court has jurisdiction to proceed with Mr. Asolo's habeas petition.[1] *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999).

I.  **Full Faith and Credit Act**

First, Mr. Asolo argues that the defendants' refusal to release him on bond violates the Full Faith and Credit Act. *See* 28 U.S.C. § 1738. According to Mr. Asolo, his Indiana criminal court has already determined that he is not a danger to the community when it approved releasing him on bond. Mr. Asolo contends that because the Indiana court already determined that he is not a danger to the community, the immigration judge was required to honor that determination, rather than order him detained for being a danger to the community based on his criminal history.

Under the Full Faith and Credit Act, the "Acts, records and judicial proceedings" of any "State, Territory, or Possession of the United States . . . shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." *Id.* In other words, the Act "requires federal courts to give the same preclusive effect to state court judgments that those judgment would be given in the courts of the State from which the judgments emerged." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982). To determine what preclusive effect the issuing state would give, a federal court applies the preclusion rules of that state. *See Walczak v. Chicago Bd. of Educ.*, 739 F.3d 1013, 1016 (7th Cir. 2014).

To begin, it is not clear that the Court has jurisdiction to decide this argument. Although 8 U.S.C. § 1226(e) does not bar attacks to the framework of the detention statute itself, it does deny jurisdiction to set aside an immigration judge's discretionary decision whether to release a detainee. The parties have not addressed whether an immigration judge's allegedly erroneous decision that a detainee is a danger to the community falls within § 1226(e). But even assuming jurisdiction, Mr. Asolo's argument is unavailing. He has offered no analysis of what preclusive effect, if any, one Indiana criminal court would give to the bond determinations of a different Indiana criminal court. In response to the government's brief noting that Mr. Asolo's argument was unsupported by any citation to authority, he stated that he relies on the text of the statute

---

[1] The appropriate respondent to a petition for habeas corpus is the petitioner's immediate custodian. *See Kholyavskiy v. Achim*, 443 F.3d 946, 953 (7th Cir. 2006). Mr. Asolo has alleged numerous custodians and named them all as defendants. Because the Court is denying his petition, it will not address which, if any, of the named custodians is the proper defendant.

itself. But the text of the Act does not address what preclusive effect Indiana courts give to each other's bond determinations. Indiana courts place limits on preclusion. For instance, a court must determine whether the party in the prior action had a full and fair opportunity to litigate the issue, whether preclusion would be unfair, and must consider factors such a privity, and a party's incentive to litigate. *See Jacobs v. Thor Motor Coach, Inc.*, 474 F. Supp. 3d 987, 994 (N.D. Ind. 2020). These are all complicated issues. For example, how would ICE litigate the state court criminal matter? Is ICE in privity with the Indiana state prosecutors? Moreover, the factors seem very similar to applying offensive nonmutual collateral estoppel, which cannot be applied to the federal government. *United States v. Mendoza*, 464 U.S. 154, 162-63 (1984). Mr. Asolo has addressed none of this. Instead, he simply says the statute applies. Undeveloped arguments unsupported by citations to authority are forfeited, and therefore the Court does not address Mr. Asolo's full faith and credit argument further. *See Williams v. Bd. of Educ.*, 982 F.3d 495, 511 (7th Cir. 2020). If Mr. Asolo's counsel are unwilling to analyze the full faith and credit argument under applicable Indiana law, the Court is not willing to engage in that very complicated analysis *sua sponte*.

## II. Due Process

Second, Mr. Asolo brings three due process claims. The first two are that § 1226(a) results in the denial of substantive due process both as written and as applied to Mr. Asolo. The third argument is that he was denied procedural due process. Mr. Asolo's two substantive due process arguments – that § 1226(a) is unconstitutional as written and as applied – have at their core the same question: at what point does due process entitle a noncitizen detained under § 1226(a) to a hearing at which the government must prove by clear and convincing evidence that the noncitizen should remain detained.[2] Mr. Asolo contends that due process requires the government to meet that standard at the outset.

The U.S. Supreme Court recently declined to resolve a similar argument that due process imposed limits on detention under § 1226(a). In *Jennings v. Rodriguez*, the Supreme Court reviewed a decision by the Ninth Circuit, which had used the canon of constitutional avoidance to interpret several immigration detention statutes including 8 U.S.C. §§ 1226(a) and (c) as carrying an implicit six-month time limit on detentions under those statutes. *See Jennings*, 138 S. Ct. at 839. But the Supreme Court reversed, holding that the canon of constitutional avoidance applies only to statutes with competing plausible interpretations, and nothing in the text of the detention statutes at issue could be interpreted as limiting detentions to six months. *Id.* at 845-48. Having concluded that the text of the statutes did not support a six-month limit to detentions, the Supreme Court declined to decide in the first instance whether the constitution imposed a limit, and remanded the case to the Ninth Circuit to consider that issue. *Id.* at 851.

---

[2] The Court is confused by Mr. Asolo's reference to and assertions of substantive due process. When an explicit textual source within the Constitution exists, that provision, not substantive due process, is used to analyze the claim. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998). At the core of all of Mr. Asolo's due process claims is a demand for a hearing with a particular burden of proof placed on the government. This falls squarely within the ambit of procedural due process which is the explicit constitutional provision contained in the Fourteenth Amendment. Mr. Asolo never explains why substantive, rather than procedural, due process is at play.

While the precise limits that due process imposes on detention under § 1226(a) remains unaddressed by the Supreme Court, it has nevertheless long held that noncitizens who, though legally admitted, have "fail[ed] to obtain and maintain citizenship by naturalization . . . remain subject to the plenary power of Congress to expel them," *Carlson v. Landon*, 342 U.S. 524 (1952), and that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process," *Denmore v. Kim*, 538 U.S. 510, 523 (2003) ("deportation proceedings 'would be in vain if those accused could not be held in custody pending the inquiry into their true character.'") (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

This Court recently addressed the constitutionality of continued detention under another provision of § 1226, § 1226(c), which *requires* the detention of certain "criminal aliens," including ones who committed offenses involving controlled substances, aggravated felonies or other covered offenses, without any allowance for a bond hearing. *See Lopez Santos v. Clesceri*, No. 20 CV 50349, 2021 U.S. Dist. LEXIS 31218 (N.D. Ill. Feb. 19, 2021). This is a key distinction: the petitioner in *Lopez Santos* had no hearing ever; whereas, Mr. Asolo has had at least three hearings relating to release on bond before an immigration judge. In the absence of Seventh Circuit guidance on the constitutional limit on detention without a bond hearing under § 1226(c), this Court found persuasive the approach articulated by the Third Circuit in *German Santos v. Warden Pike City Corr. Facility*, 965 F.3d 203 (3d Cir. 2020). In *German Santos*, the Third Circuit held that when a noncitizen's detention without a bond hearing becomes unreasonable, due process demands an individualized bond hearing at which the government bears the burden to show by clear and convincing evidence that the noncitizen is a danger or a flight risk. *Id.* at 212-14. Determining whether a noncitizen's detention has become unreasonable involves examining a non-exhaustive list of factors including the duration of the detention, the likelihood of continued detention, the reasons for delay, and the conditions of confinement. *Id.* at 212-13. Additional relevant factors include whether the noncitizen has asserted defenses to removal. *See Hylton v. Decker*, 502 F. Supp. 3d 848, 854 (S.D.N.Y. 2020).

*German Santos* involved the detention of noncitizens under § 1226(c), but this Court finds its rationale equally applicable to detention under § 1226(a). Granted, the mandatory detention of noncitizens under § 1226(c) is distinguishable from Mr. Asolo's discretionary detention under § 1226(a) because § 1226(c) involves noncitizens detained based on committing one of the enumerated offenses, who arguably pose a greater risk of danger. *See Denmore*, 538 U.S. at 517-19. But the statutory scheme of § 1226 already accounts for the differing levels of potential danger because, unlike criminal noncitizens under § 1226(c) who must be detained without any provision for bond, under § 1226(a) the "Attorney General may release an alien . . . [if] the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding."[3] Moreover, the *German Santos* factors allow a court to gauge the reasonableness of continued detention whether the noncitizen was initially detained as required under § 1226(c) or at the discretion of an immigration judge under § 1226(a) alike.

Such an approach mirrors the Second Circuit's in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). Mr. Asolo cites *Velasco Lopez* for the proposition that under 8 U.S.C. § 1226(a)

---

[3] The plain result evidences a Congressional policy decision as to when the Executive Branch should be given discretion as to whether to detain or release an alien pending the outcome of the hearing.

the government must justify continued detention with clear and convincing evidence of a risk of flight or danger to the community. Petition [1] at 18 (citing *Velasco Lopez*, 978 F.3d at 846). However, *Velasco Lopez* required the government to bear that burden only after balancing factors it found relevant to determining "'when, under out constitutional system, judicial-type procedures must be imposed upon administrative action.'" *Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 348 (1976)). Only after evaluating factors such as the private and public interests at stake, and the risk of an erroneous deprivation of the detainee's liberty interest without additional safeguards, did the Second Circuit conclude that detention under § 1226(a) had become unduly prolonged:

> While the Government's interest may have initially outweighed short-term deprivation of Velasco Lopez's liberty interests, that balance shifted once his imprisonment became unduly prolonged. We conclude that Velasco Lopez's prolonged incarceration, which had continued for fifteen months without an end in sight *or a determination that he was a danger or flight risk*, violated due process. We further conclude that the district court appropriately addressed the violation by ordering a new hearing at which the Government was called upon to justify continued detention

*Id.* at 855 (emphasis added). The approach is also consistent with *Galan-Reyes v. Acoff*, 460 F. Supp. 3d 719 (S. D. Ill. 2020). Although Mr. Asolo cited *Galan-Reyes* for the proposition that the government must justify immigration detention by clear and convincing evidence, the *Galan-Reyes* court reached that result only after first reviewing factors relevant to whether the noncitizen's detention had grown unreasonable. *Id.* at 723 (listing the factors relevant to "assessing the constitutionality of continued immigration detention.")

In addition, the Seventh Circuit has recognized that preponderance of the evidence is the default burden. In *Raimerez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016), the court stated that "unless the governing statute (or in this case, the rule) specifies a higher burden, or the Constitution demands a higher burden because of the nature of the individual interests at stake, proof by a preponderance of the evidence will suffice." The decision gave examples of contexts in which the constitution demanded a higher standard, including the termination of parental rights, involuntary commitment, and "deportation, and denaturalization." *Id.* But the cases it cited in which clear and convincing evidence was required in deportation and denaturalization proceedings involved the ultimate determination of whether a person was to be deported or denaturalized, not their detention while that determination was made. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 253 (1989)). As applied to detentions under § 1226(a), the standard is preponderance of the evidence until the detention has grown unreasonably long, in which case due process concerns shift the burden to the government to justify by clear and convincing evidence that detention remains proper.

The Court acknowledges that in another of the cases Mr. Asolo cited, *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), the Ninth Circuit held that the burden of proof under § 1226(a) falls on the government and the applicable standard is clear and convincing evidence. The Ninth Circuit reached that conclusion without first explicitly evaluating whether that petitioner's detention had grown unreasonable. However, the decision notes that at the time it

issued, the petitioner had remained in ICE custody for four years, as opposed to Mr. Asolo's ten-month detention. In any event, this Court finds that the approach of *German Santos* and *Velasco Lopez* better balances the liberty interests of noncitizens with the power vested in Congress and the Executive to detain noncitizens while determining their removability.

Mr. Asolo attempts to further support his argument about the government's burden by comparing detentions for immigration purposes to detentions in other contexts, such as pretrial detention in criminal cases, or the detention of enemy combatants or persons with a mental illness. But as previously noted, the Supreme Court has repeatedly "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *See Denmore*, 538 U.S. at 523. As a result, references to detention in other contexts are of limited value because the concerns at issue differ, including citizenship and removability, and because the Supreme Court has already addressed the constitutionality of detention within the specific context of immigration. This balancing recognizes the separation of powers between Congress, the Executive and the Federal Courts. In any event, the preponderance standard and placing the burden on a detainee arises in other contexts as well. For instance, criminal defendants may be detained under the Bail Record Act of 1984 based on a preponderance of evidence of a risk of flight. *See* 18 U.S.C. § 3142(f)(2). In addition, the burden falls on criminal defendants to prove that they should be released pending further proceedings to determine whether they violated the terms of their probation or supervised release. *See* Fed. R. Crim. P. 32.1.

Having determined that the constitution requires the government to provide clear and convincing evidence of danger and risk of flight only at the point that detention is no longer reasonable, the Court now turns to the reasonableness of Mr. Asolo's continued detention under the *German Santos* factors. The most important factor is the duration is Mr. Asolo's detention. *German Santos*, 965 F.3d at 210. Mr. Asolo was taken into ICE custody on September 27, 2020, and so had been in custody for about ten months. The Supreme Court has not set a bright-line rule limiting the length of immigration detentions. In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), it set a presumptive limit of six months, though that case involved persons who remained detained under 8 U.S.C. § 1231(a)(6) even though final orders of removal had already entered, and so their detention had seemingly become indefinite. But even a detention that exceeds the six-month presumptive limit adopted in *Zadvydas* "does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701. Rather, the longer the detention, the more closely the Court must evaluate the reasonableness of the detention by balancing all relevant factors. Mr. Asolo's detention is about half the length of the petitioner's 18-month detention in *Lopez Santos*, 2021 U.S. Dist. LEXIS 31218, in which this Court concluded that Mr. Lopez Santos' detention without any hearing had grown unreasonably long in part because of the government's repeated appeals of the immigration judge's orders granting asylum. On balance, Mr. Asolo's detention of about ten months weighs slightly in favor of his request for habeas release, but must be weighed against the other factors set out in *German Santos*.

Next, the Court considers the likelihood of continued detention. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *German Santos*, 965 F.3d at 211. Again, the Court notes that Mr. Asolo has had a bond hearing and at least two attempts to modify the ruling. Neither side has addressed in any detail the anticipated length of Mr. Asolo's continued detention. Mr. Asolo

has stated only that his immigration proceedings could continue for "several additional months," Petition [1] at 41, but that for the time it has been pending "there has been substantial movement in Petitioner's immigration court proceedings," *id.* at 8. According to the affidavit from a deportation officer attached to the government's response brief, Mr. Asolo's application for asylum had been scheduled for a "final merits hearing" on February 22, 2021, but was rescheduled at Mr. Asolo's request so he could file an I-130 visa petition based on his recent marriage to a U.S. citizen. Response [17], Ex. B, ¶¶ 18-19. The next hearing scheduled in his immigration proceeding is set for August 30, 2021. Based on the information presented, while it appears likely that Mr. Asolo will remain detained while the immigration judge considers his application and petition, it does appear that the case is proceeding and that his detention will therefore not be indefinite. Accordingly, this factor weighs neither in favor of nor against his request for habeas relief.

Another relevant factor under *German Santos* is the reason for delay, and whether it is more attributable to the noncitizen or the government. As noted above, Mr. Asolo was on the verge of a scheduled final merits hearing on February 22, 2021, but the hearing did not occur because of his request for a continuance, which the immigration judge allowed. The request is understandable because Mr. Asolo had only recently married, which first made him eligible to petition for legal permanent resident status. But obtaining a continuance obviously carries with it a delay in the proceedings. On the other hand, there appears to be no delay attributable to the government. That stands in sharp contrast to the situation that led this Court to conclude that detention had grown unreasonable in *Lopez Santos*, where the government had delayed proceedings by repeatedly appealing the immigration judge's order granting asylum. *See Lopez Santos*, 2021 U.S. Dist. LEXIS 31218, at *16. This factor weighs against habeas relief.

Next, the Court considers the conditions of Mr. Asolo's confinement. If a noncitizen's civil detention "looks penal, that tilts the scales towards finding the detention unreasonable." *German Santos*, 965 F.3d at 211. Although Mr. Asolo is in the custody of ICE, he is being housed in a county jail. The jail also houses criminal defendants awaiting trials or serving sentences. Although the partis' briefs do not describe the conditions of Mr. Asolo's confinement, this Court has previously noted that other ICE detainees at the McHenry County Jail are housed in cells about eight feet wide by fifteen feet long, and like criminal defendants they are not free to leave or travel. *See Lopez Santos*, 2021 U.S. Dist. LEXIS 31218, at *17-18. Detainees can access a gym, common room with a television, a computer and legal materials, basic medical care, and have a few privileges unavailable to criminal defendants, but overall their conditions of confinement are not meaningfully different than those of criminal defendants. *Id.* This factor weighs in favor of habeas relief.

Defenses to removal is another consideration when assessing the reasonableness of continued detention. Mr. Asolo has raised two defenses to his removal: asylum and his request for legal permanent resident status based on his marriage. Defenses usually weigh in favor of a bond hearing, but Mr. Asolo asserted at the last minute one of those defenses and asked for a continuance because of it on the day of his merits hearing on his other defense, which led to the current delay. On balance, this factor weighs neither in favor of nor against his request for habeas relief.

Finally, another critical relevant fact is that Mr. Asolo already received a bond hearing, and has appealed the immigration judge's order denying him bond to the Board of Immigration Appeals. Although he contends that the immigration judge denied him bond without requiring clear and convincing evidence from the government, he nevertheless received greater consideration than detainees under § 1226(c), who receive no consideration for bond until the point that their continued detention has grown unreasonable. As the Court has emphasized throughout this order, that hearing, as well as the hearing in which Mr. Asolo sought modification of his detention, changes the entire due process analysis.

The fact that Mr. Asolo remains detained ten months after being taken into custody, and that the conditions of his confinement look penal, are valid concerns when assessing the reasonableness of his detention. But the Court must balance those factors against ones that explain the reasons that he remains detained, including that his immigration case continues to proceed along and that the reason for the delay in his final merits hearing on his asylum application is attributable to his own request for a continuance. On balance, Mr. Asolo's detention has not approached the type of indefinite detention that makes continued detention unreasonable. Accordingly, Mr. Asolo's detention has not become unreasonable, and he is not entitled to a detention hearing at which the government must establish with clear and convincing evidence that he is a danger to the community or risk of flight.

Mr. Asolo sets out an argument that his rights to procedural due process have also been infringed. According to his argument, ICE procedures are inadequate because the decision to detain him for being a danger to the community has adversely affected his ability to defend himself in his Indiana criminal case. Specifically, he contends that he can attend hearings in his criminal case only if ICE arranges for transport. Petition [1] at 32. Moreover, he contends that ICE could move him to a facility even further from Indiana "[a]t a moment's notice," further threatening his ability to defend himself in his criminal proceeding. *Id.* However, even though in his motion for a preliminary injunction he contends that "ICE refuses to take him to his hearings," Motion for Preliminary Injunction [3] at 9, he never contends that he ever asked ICE to transport him to Indiana, or described any adverse consequence in his criminal proceeding that occurred because he remains in immigration detention. In fact, according to the docket in his criminal case, the criminal court is aware that he remains in the custody of ICE. *See* mycase.in.gov (Case No. 49D31-2009-F5-030168) (last visited August 6, 2021). Also of note is that the proceedings in the criminal case have been conducted remotely, the next remote hearing is a pretrial conference scheduled for August 10, 2021, *id.*, and Mr. Asolo has not asserted that he has been denied a request to participate in that way. In fact, in his motion for a preliminary injunction, he states that "it is doubtful that Respondents will even have to transport Petitioner anywhere for him to attend his hearings; all that is required is for Respondents to make arrangements for Petitioner to attend his hearings virtually." Motion for Preliminary Injunction [3] at 9. As for his argument that ICE could move him to a different facility at any time, the government has responded that it has no intention of transferring him from the McHenry County Jail.

The Court notes that Mr. Asolo also briefly mentioned four instances of COVID-19 infections at the McHenry County Jail as "exacerbate[ing] the fact that Petitioner's detention is unlawful and unconstitutional." Petition [1] at 9. But he does not discuss whether the infections

are spreading, the jail's efforts to mitigate the spread, or the availability of vaccines and whether he requested and obtained a vaccine. This argument is undeveloped and forfeited. *See Williams*, 982 F.3d at 511.

Because Mr. Asolo has not established any adverse consequence his continuing detention has had or threatens to have in his pending criminal matter, his argument that his rights to procedural due process have been impacted is unavailing.

### III. Motion for a Preliminary Injunction

Mr. Asolo also seeks a preliminary injunction ordering ICE not to transfer him to a facility outside the Northern District of Illinois, and to transport him to Indiana to attend hearings in his criminal case. Mr. Asolo contends that a transfer could cause this Court to lose jurisdiction over his habeas petition, and could hamper his ability to defend himself in the Indiana criminal matter. Given that the Court is denying Mr. Asolo's petition for habeas relief, his concerns about jurisdiction are moot. As for his Indiana criminal matter, as noted above Mr. Asolo states in his motion that the proceedings in his criminal matter are virtual, and that "it is doubtful that Respondents will even have to transport Petitioner anywhere for him to attend his hearings." Motion for Preliminary Injunction [3] at 9. Moreover, he never asserts that he ever asked ICE to transport him to Indiana for a criminal hearing. Because Mr. Asolo has not established any threat to jurisdiction over his habeas petition or any need for the Court to order ICE to transport him to his criminal proceedings, the request for injunctive relief is denied.

### CONCLUSION

For the reasons given, Mr. Asolo's request for habeas relief [1] and for a preliminary injunction [3] are denied. The clerk is directed to enter judgment and to terminate this proceeding.

Date: August 6, 2021     By: _____
                          Iain D. Johnston
                          United States District Judge